**James P. ANDREWS**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services.**

Civ. A. No. 82–4631.

United States District Court,
E.D. Pennsylvania.

Nov. 3, 1983.

Ruth Grunfeld, Community Legal Services, Philadelphia, Pa., for claimant.

Peter F. Vaira, Jr., U.S. Atty., Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for the Secretary of Health and Human Services.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This is an action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Secretary of Health, Education and Welfare (Secretary) denying James P. Andrews' claim for Supplemental Security Income (SSI) disability benefits. This matter is now before the Court on cross-motions of the parties for summary judgment.

Claimant Andrews' initial application for SSI disability benefits and his request for reconsideration were both denied. On March 2, 1982 his application was considered *de novo* at a hearing before an Administrative Law Judge (ALJ), at which time the claimant was represented by counsel. The ALJ's decision denying benefits was subsequently affirmed by the Appeals Council on August 26, 1982 and thereby became the final decision of the Secretary.

Upon careful consideration of the entire record, we conclude that the ALJ failed to properly evaluate the evidence of claimant's chronic alcoholism in conjunction with the other alleged impairments which formed the basis for his disability claim. Therefore, the cross-motions of the parties for summary judgment will be denied and the case remanded to the Secretary for further consideration.

Claimant James Andrews is 43 years old and has a tenth grade education. He has had work experience as a truck driver and laborer in the roofing business, dishwasher, gas station and parking lot attendant, bartender, cab driver and porter. (T. 56). At his hearing before the ALJ, claimant stated that he was on welfare and had not worked in 3½ to 4 years. (T. 27–29). He identified alcoholism as his "main problem" and admitted to being a chronic alcoholic since age 17. (T. 40). He drinks between one-half gallon and a gallon of wine per day, as well as a fifth of liquor if he has enough money. (T. 30, 38). He has experienced blackouts, amnesia and hallucinations when drinking. (T. 44). Claimant also complains of problems with his feet, testifying that he can only walk 6–7 blocks and can only stand for 20–30 minutes. (T. 35, 37). In addition, he suffers from back pain, shortness of breath, loss of vision in his left eye and a nervous condition, for which he takes Valium.

The medical record supports claimant's testimony regarding his alcohol dependence and his numerous unsuccessful attempts at detoxification. Claimant was admitted to St. Luke's and Children's Hospital on August 31, 1976 for detoxification for "acute alcoholism." (T. 130). He was admitted again on February 3, 1977 for "chronic

alcoholism." The record also shows three separate admissions to Albert Einstein Medical Center because of alcohol abuse. Claimant was first admitted on September 14, 1978; final diagnosis was "alcohol dependency." (T. 87). Claimant was again admitted to Einstein on December 29, 1978 because of acute alcoholism. A discharge prognosis of "fair" was conditioned on claimant receiving follow-up treatment and continuing prescribed use of Antabuse. (T. 89). Hospital records from a third admission on April, 1979 indicate that claimant had difficulty "controlling impulses" during his confinements; discharge diagnosis was "alcohol dependence." (T. 90).

The record also contains a physical examination of claimant conducted by Dr. Stephen E. Mitteldorf on behalf of the Secretary. (T. 107–109). His report of April 2, 1981 notes that claimant has "long standing alcoholism" with "no apparent physical stigmata of chronic alcoholic disease such as neuropathy, upper GI disease or hepatic disease." The most recent medical evidence in the record which discusses claimant's alcohol abuse is a psychiatric evaluation by Dr. Alan Keller of the Philadelphia Psychiatric Center, dated March 15, 1982. (T. 145–147). Dr. Keller's primary diagnosis was "alcohol dependency, continuous"; a secondary diagnosis of "antisocial personality disorder" and "borderline personality disorder" was also indicated. Dr. Keller concludes that "the patient's abuse of alcohol and interrelated personality disorders make him unable to work and he has ... been unable to work due to these problems for at least 2–3 years."

■ Under the Social Security Act, the claimant has the initial burden of establishing disability. *Hess v. Secretary of Health, Education and Welfare,* 497 F.2d 837, 840 (3d Cir.1974). This burden is sustained when the claimant demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...." 42 U.S.C. § 423(d)(1)(A). *See id.* at § 1382c(a)(3)(A). The Secretary's regulations set forth a 5-part sequential

process which an ALJ must follow in evaluating disability claims. *See Santise v. Schweiker,* 676 F.2d 925, 927 (3d Cir.1982), *appeal docketed* No. 81–1983 (April 26, 1982). The initial inquiry is whether claimant is currently working; if so, disability is denied. *See* 20 C.F.R. § 404.1520(b). Secondly, the ALJ determines, solely on the basis of medical evidence and without reference to vocational factors, whether the claimed impairment is "severe", i.e. significantly limits ability to do basic work activities; if it is not severe, disability is denied. *Id.* at § 404.1520(c). Thirdly, the ALJ considers, again solely on the basis of medical evidence, whether the claimed impairment equals or exceeds those described in Appendix I of the regulations; if so, benefits are automatically awarded. *Id.* at § 404.-1520(d). If disability cannot be determined by these previous steps, a fourth inquiry is considered: whether the claimant has the "residual functional capacity"—what an individual "can still do despite his limitations"—to perform past work. *Id.* at §§ 404.1520(e), 404.1545(a). If the claimant does not have the residual functional capacity to return to previous work, the claimant has, at this point, presented a *prima facie* case for disability; the burden then shifts to the Secretary to demonstrate claimant has the capacity to perform specific jobs existing in the national economy. *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979). *See* 20 C.F.R. § 404.1520(f). In the instant case, the ALJ's inquiry ceased at the second level. 20 C.F.R. § 404.1520(c). Because it was determined that James Andrews did not have a "severe" mental or physical impairment, the ALJ denied his disability claim.

■ Findings of the Secretary must be accepted as conclusive by a reviewing court if supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Therefore, the only issue now before this Court is whether there was substantial (medical) evidence in the record (*see* 20 C.F.R. § 404.1520(c)) to support the ALJ's

finding that claimant did not have a "severe" impairment and thus was not entitled to receive SSI disability benefits. While we agree that there is substantial evidence in the record to support a finding that claimant's other impairments are not of requisite severity, we disagree with the ALJ's evaluation of claimant's chronic alcoholism on two bases: first, the ALJ failed to explain his implicit rejection of unrebutted medical evidence that claimant is unable to work because of chronic alcoholism; secondly, the ALJ appears to have applied the wrong legal standard in determining that claimant's alcoholism is not disabling under the Act.

## I.

The ALJ must make "specific subordinate findings of fact to support his ultimate factual findings." *Hargenrader v. Califano*, 575 F.2d 434, 436 (3d Cir.1978). In addition to explaining the "relative weight and credibility of the evidence before him," the ALJ must make "explicit statements as to 'what portions of the evidence he accepted or rejected.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979). *See also Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). As stated by the Court in *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir.1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975),

> [a]s factfinder ... [the ALJ] has the right to reject testimony entirely, but failure to indicate rejection could lead to a conclusion that he neglected to consider it at all.

It follows, therefore, that a reviewing court has good cause to remand a case to the Secretary "where relevant, probative and available evidence was not *explicitly* weighed" by the ALJ in evaluating a disability claim. *Saldana v. Weinberger*, 421 F.Supp. 1127, 1131 (E.D.Pa.1976) (emphasis added).

In the instant case, the ALJ failed to provide any explanation for his implicit rejection of important probative evidence— Dr. Keller's evaluation that claimant suffers from alcoholism and interrelated personality disorders which render him unable to work. The ALJ's statement that "[t]here is not evidence of a psychiatric condition ... which would preclude the performance of substantial gainful activity [by claimant]" (T. 12) is directly contradicted by Dr. Keller's evaluation. The ALJ's failure to acknowledge this evidence in the record and to explain his rejection of it is particularly significant since Dr. Keller's report provides the most recent medical evaluation of claimant's condition, and it also suggests that claimant's condition is "severe." Consideration of such evidence might well have led to a finding of disability. *Stewart v. Secretary of Health, Education and Welfare*, 714 F.2d 287, at 290 (3d Cir.1983).

## II.

The second basis for error in the ALJ's decision is his application of an improper legal standard in evaluating the evidence of claimant's alcoholism. The premise is well accepted that alcoholism, either "alone or combined with other causes, can constitute a disability if it prevents a claimant from engaging in substantial gainful activity." *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir.1981). *See also Hicks v. Califano*, 600 F.2d 1048, 1051 (4th Cir.1979); *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979); *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir.1981); *Adams v. Weinberger*, 548 F.2d 239, 243–244 (8th Cir.1977). The ALJ in the instant case erroneously concluded that because claimant exhibited no signs of "end organ damage" as a result of his alcoholism, his condition could not be found disabling under the Act, and therefore no further inquiry was required. However, this theory was recently rejected by the Third Circuit in *McShea v. Schweiker*, 700 F.2d 117, 119 (3d Cir.1983) (quoting *Hicks*, 600 F.2d at 1051): "[n]othing in the Social Security Act permits rejection of a disability claim simply because the claimant has not experienced significant end organ damage." Rather the test for determining whether an alcoholic is disabled under the

Act is "[whether the claimant is] addicted to alcohol and, as a consequence, has lost the ability to control its use." *Id. See also Griffis v. Weinberger,* 509 F.2d 837, 838 (9th Cir.1975); *Brennan v. Schweiker,* 542 F.Supp. 680, 683 (E.D.Pa.1982); *Adams,* 548 F.2d at 244.

The ALJ's sole reference to this issue of voluntariness is his statement that "[i]t does not appear that the claimant's use of alcohol has progressed to the point that there is not an element of volition in his drinking." (T. 12). However, the ALJ fails to substantiate this finding with evidence in the record. Furthermore, the record indicates evidence contrary to this finding of voluntariness. Dr. Keller's report states that claimant is

> a heavy alcohol abuser and has failed to remain sober after multiple detoxifications ... [he] has poor judgment as evidenced by the fact that he admitted to feeling better physically when sober but [always] returned to drinking as before. (T. 145–146)

Claimant also testified that he has been unable to stop drinking and that he cannot function without alcohol. (T. 41–42).

Absent specific evidence that claimant can control his alcoholism, the ALJ's conclusion that claimant's alcoholism is voluntary is improper and without foundation. His conclusion appears to be based on his finding that claimant does not suffer from any "psychiatric condition" (T. 12) and that claimant's own testimony is not credible. (T. 13). Even if we accept the ALJ's resolution against claimant on the issue of credibility, his analysis is again flawed by his failure to evaluate Dr. Keller's report which details claimant's psychological impairments.

> While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician ...

*Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir.1978). As noted recently in *Van Horn v. Schweiker,* 717 F.2d 871, at 874 (E.D.Pa.

1983), "[i]n cases of alleged psychological disability, such lay observation [by an ALJ] is entitled to little or no weight." [citations omitted]. Similarly, the ALJ's observations on claimant's "neat" appearance, verbal competence, and ability to perform "normal activities of daily living" (T. 12) are not determinative of the relevant issue of voluntariness—whether claimant has the ability to control his drinking. Such observations are of limited legal relevance and do not preclude a finding of disability based on alcoholism. *Brennan,* 542 F.Supp. at 682. *See also Smith v. Califano,* 637 F.2d 968, 971–72 (3d Cir.1981) (disability is not equivalent to "vegetat[ing] in a dark room excluded from all forms of human and social activity"). On remand, the ALJ should reassess and, if necessary, conduct further fact-finding on the issue of claimant's alcoholism; inquiry should focus on whether claimant has lost the ability to voluntarily control his drinking, thereby preventing his substantial gainful employment.

### III.

Finally, while we express no opinion on the ultimate disposition of this case on remand, we are concerned by evidence in the record that an award of SSI benefits may only serve to exacerbate claimant's alcoholism. *See McShea,* 700 F.2d at 119. Dr. Keller's report states that claimant would "benefit most from an inpatient alcohol detoxification program followed by a long term residential alcohol treatment program," but that "[he] is unwilling to participate in such a program ... he is only concerned with getting SSI to help his financial situation." (T. 147). Dr. Keller opines further that if claimant is given a guaranteed source of income like SSI, it will only serve to worsen his alcohol abuse and accompanying Personality Disorder. (T. 147). We note, however, that the regulations specifically provide for treatment of alcoholics (*see* 20 C.F.R. § 416.1720) and for the withholding of benefits if treatment is refused (*see id.* at § 416.1725). *See generally id.* at §§ 416.935–416.939. The regulations also provide that if a beneficiary is

not able to manage his SSI benefits in his own best interest, payments may be made to a representative payee on his behalf. *See id.* at §§ 416.601–416.621; *McShea*, 700 F.2d at 119–120. The regulations thus provide appropriate guidance in this situation should the ALJ decide that disability benefits should be awarded.

The cross-motions by the parties for summary judgment are denied, and this case is remanded for further proceedings consistent with this Memorandum. An appropriate Order follows.